UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

OLIVER CONOVER,

                 Plaintiff,

                                     Civil No.: 1:17-cv-00486

vs.

THE GOODYEAR TIRE & RUBBER COMPANY,

                 Defendant.
_____


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S <u>MOTION IN LIMINE</u>


GOLDBERG SEGALLA LLP

*Attorneys for Defendant*
*The Goodyear Tire & Rubber Company*
665 Main Street, Suite 400
Buffalo, New York 14203
(716) 566-5400
kbostick@goldbergsegalla.com


*Of Counsel:*
Kenneth L. Bostick, Jr.

## PRELIMINARY STATEMENT AND BACKGROUND

Defendant The Goodyear Tire & Rubber Company ("Goodyear"), respectfully submits this Memorandum of Law in support of its motion *in limine* seeking preclusion of: (1) the testimony and purported Life Care Plan of Rebecca Gordon, RN, CLNC, CLCP; (2) the testimony and General Data Sheet prepared by plaintiff's economic damages expert, Ronald Reiber, Ph.D.; (3) any evidence, expert or otherwise, regarding the weather/temperature recorded at Buffalo Niagara International Airport at the time of the incident; and (4) any photographs that were not disclosed prior to the close of discovery, including those photographs disclosed on September 11, 2019.

This negligence action arises out of plaintiff Oliver Conover's alleged slip and fall on black ice in the parking lot area of a Goodyear Auto Service Center located at 1355 Main Street, Buffalo, New York on January 19, 2015.  A non-jury trial is scheduled to commence on December 9, 2019.

Plaintiff's Economic Damages Experts

Plaintiff disclosed retention of two economic damages experts pursuant to Federal Rule of Civil Procedure 26(a)(2) for discovery purposes, but did not submit the expert witness list required by the Court's Pretrial Order dated September 27, 2019.  *See Exhibit B*.  Goodyear has separately moved to preclude plaintiff from presenting any expert testimony or reports based on plaintiff's flagrant disregard of the Pretrial Order.  In the event that the Court denies Goodyear's motion to preclude, plaintiff's economic damages experts should still be precluded from testifying or submitting reports because their anticipated testimony is unreliable, speculative, and unsupported by factual data.

Plaintiff disclosed Rebecca Gordon, RN, CLNC, CLCP ("Gordon") as an expert for discovery purposes. Gordon is a Registered Nurse who lists her specific areas of expertise as "TBI and Emergency Medicine, Holistic Medicine and Environmental Issues, Ambulatory Care –

Endoscopy/Colonoscopy, and Doctors Offices/School Nursing.  *See Exhibit C.*

Plaintiff disclosed a "Life Care Plan" prepared by Gordon, which purports to project plaintiff's future medical treatment and the associated costs.  *See Exhibit D*.  Significantly, the Life Care Plan is dated February 27, 2016, more than two years before plaintiff was deposed.  It was never updated or supplemented (Goodyear objects to any update or supplementation of Gordon's Life Care Plan at this time).  Gordon states in the Life Care Plan that it was "written based on the recommendations of the treating physicians.  The physicians' recommendations were based on a reasonable degree of medical certainty, and approved.  The life care plan has been reviewed, discussed, and approved by the treating physicians."  However, it is entirely unclear which of plaintiff's treating physicians reviewed and/or approved the Life Care Plan.  In fact, it appears that Gordon never even met or observed the plaintiff before submitting her speculative and unsubstantiated projections.  Further, the Life Care Plan provides absolutely no analysis as to how its projections were made and calculated; it appears to have been drafted simply based on Gordon's review of a remarkably small sampling of plaintiff's medical records (for context, plaintiff's Workers' Compensation file alone contained over 1,200 pages of medical records).

The Life Care Plan presents several categories of projected future medical treatment, and then assigns a base cost to each category. The specific categories of projected future medical care are as follows:

- Physical therapy for 1-2 sessions of 12 appointments per year;
- Chiropractic treatment 1-2 times per week;
- Message therapy 1-2 times per month;
- Knee x-ray – every 2-3 years;
- Knee MRI every 3-5 years;
- Lumbar spine x-ray every 2-3 years;
- Lumbar spine MRI every 3-5 years;
- EMG twice in lifetime;
- Lab test every 6 months for two years to evaluate knee infection;
- Possible left knee arthroscopy; and

3

- Possible lumbar surgery (unspecified)

As noted, it is entirely unclear how or from where Gordon drew her projections.  She provides no information whatsoever in that regard, aside from stating that they were based on "recommendations" found in the small sampling of records she reviewed.  But more importantly, Gordon's Life Care Plan was prepared approximately two years before plaintiff's deposition, during which plaintiff expressly disclaimed and eliminated each and every projection made by Gordon.  Specifically, plaintiff conceded the following during his deposition:

- His chiropractic treatment concluded in 2015 (*Exhibit A*, p. 122);
- No one has recommended further chiropractic treatment (p. 122);
- He does not anticipate any further physical therapy (p. 123);
- No one has recommended further physical therapy (p. 123);
- No one has told him he will need another x-ray or more imaging on his back (p. 125);
- He does not anticipate having further x-rays or imaging on his back (p. 125);
- He does not intend to seek specialized treatment for his alleged hip injuries (p. 126);
- No one has recommended pain management (p. 128);
- No one has recommended any further treatment for his knee (p. 101);
- No one has recommended any additional surgeries for his knee (p. 101); and
- He does not have any additional treatment planned for his knee (p. 101).

The base costs for Gordon's disproven projections were extrapolated into a "General Data Sheet" prepared by plaintiff's expert economist Ronald Reiber, Ph.D. ("Reiber") on December 21, 2017 (also before plaintiff was deposed).  *See Exhibit E*.  Reiber's General Data Sheet contains unanalyzed projections of plaintiff's future medical costs and lost past and future wages.  Reiber, like Gordon, was disclosed for discovery purposes, but was not disclosed by plaintiff as a trial witness.

Reiber's projection of plaintiff's future medical expenses is inherently unreliable, because he relies solely on the disproven assumptions in Gordon's inadmissible Life Care Plan.  He did not review any of plaintiff's medical records or speak with any of plaintiff's treating physicians.  Indeed, in his Expert Disclosures pursuant to Rule 26(a)(2), plaintiff states that Reiber's opinions

4

are based on "a review of plaintiff's employment and financial records."  Regardless, because plaintiff admitted that each item of projected future medical treatment in Gordon's Life Care Plan has not been recommended, planned, or anticipated, Reiber's unanalyzed data purporting to show plaintiff's future medical care costs have no probative value whatsoever.

Reiber's projected lost wages calculations are also demonstrably false.  In his economic loss calculation, Reiber incorrectly assumes that plaintiff was a full-time employee at NAPA Auto Parts from 2011 – 2015.  However, plaintiff testified unambiguously that NAPA never employed him full time.  Rather, he worked part-time, 30 hours per week, with no opportunity for overtime. *See Exhibit A*, at p. 49-51.

## POINT I

### THE TESTIMONY AND REPORTS OF GORDON AND REIBER SHOULD BE PRECLUDED

To the extent that Gordon and Reiber are not precluded from testifying based on plaintiff's failure to list them as trial witnesses or comply with the Pretrial Order, their testimony and reports should be precluded under well-settled evidentiary principles.

Under Federal Rule of Evidence 702, the party offering expert testimony bears the burden of laying a proper foundation, and must demonstrate its admissibility by a preponderance of the evidence.  *See* Daubert v. Merrell Dow Pharma., Inc., 509 U.S. 579, 582, n.10 (1993).  Rule 702, which governs the admissibility of expert testimony, provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)  the testimony is based on sufficient facts or data;

(c)      the testimony is the product of reliable principles and methods; and

(d)      the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under Rule 702, "the trial judge must ensure that any scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589.  The district court has the gatekeeping responsibility of barring the introduction of conjecture and speculation by witnesses who may not be qualified by knowledge or experience to render truly expert opinions on the matter at issue, and whose proffered testimony is not supported by appropriate validation and reliable scientific methodology. Id. at 590.

The proponent of the expert testimony - here, the plaintiff - bears the burden of showing that the admissibility requirements of Federal Rule of Evidence 702 are satisfied.  United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007); Benjamin v. Fosdick Machine Tool Company, 2015 US Dist. LEXIS 52772 (W.D.N.Y. 2015).  The key showing to be made is that the proffered testimony is sufficiently reliable, that is, it is grounded in sufficient facts and data, is the product of reliable principles and methods, and that the expert has applied the principles and methods reliably to the facts of the case.  Solorio v. Asplundh Tree Expert Co., 2009 WL 755362 (S.D.N.Y. 2009).  The Daubert factors are not exhaustive; courts may also consider any other "reasonable measures of the reliability of expert testimony." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

"[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Amorgianos v. Nat'l R.R.Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002); see Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir.1999) ("[A] district court

must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used."). Further, where an expert's testimony is "connected to existing data only by the ipse dixit of the expert[,][a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136 (1997).

Here, it is clear that plaintiff cannot meet his burden to show that the reports and anticipated testimony of Gordon and Reiber satisfy the admissibility requirements of Rule 702.

### 1.     Gordon Is Unqualified To Render An Opinion On Plaintiff's Future Medical Care And Costs

The party seeking to qualify a witness as an expert must establish that the witness possesses "scientific, technical or other specialized knowledge," relevant to issues in the case, as required by Rule 702, based on the witness's "knowledge, skill, experience, training or education." Fed.R.Evid. 702.  Stated another way, once a party calls into question an expert's qualification under Daubert, the party who seeks to qualify the witness as an expert bears the burden of persuasion to convince the Court that the proposed expert is indeed qualified.  Id.

To determine whether a witness is qualified to render an expert opinion, the Court engages in a two-part inquiry:

> [T]he court must first ascertain whether the proffered expert has the educational background or training in a relevant field. Then the court should further compare the expert's area of expertise with the particular opinion the expert seeks to offer [and permit t]he expert ... to testify only if the expert's particular expertise ... enables the expert to give an opinion that is capable of assisting the trier of fact.

TC Sys. Inc. v. Town of Colonie, N.Y., 213 F.Supp.2d 171, 174 (N.D.N.Y.2002).  Where an expert's opinion exceeds the scope of her qualifications, the witness's opinions should be excluded.  Dreyer v. Ryder Auto. Carrier Grp., Inc., 367 F. Supp. 2d 413, 425 (W.D.N.Y. 2005).

There is nothing in Gordon's Curriculum Vitae or Life Care Plan that qualifies her to render an expert opinion on plaintiff's projected future medical treatment. She is not a physician and cannot render any medical diagnosis (even if she interviewed or met with plaintiff, which it appears she did not). Although Gordon is a Certified Life Care Planner, she specializes in TBI and Emergency Medicine, Holistic Medicine and Environmental Issues, Ambulatory Care – Endoscopy/Colonoscopy, and Doctors' Offices/School Nursing – none of which are implicated in plaintiff's past, present, or projected future medical care. Moreover, there is no indication that Gordon has ever been qualified to offer expert testimony in federal court or in the state of New York.

It is the plaintiff's burden to demonstrate that Gordon is qualified to testify on plaintiff's future medical treatment and the associated costs. Plaintiff has made no such demonstration here. Accordingly, to the extent Gordon's testimony is not precluded based on plaintiff's failure to list her as a trial witness, it should be precluded based on Gordon's utter lack of qualification to render any competent opinion on plaintiff's future medical care. Consequently, her Life Care Plan should also be precluded.

2.    **Gordon's And Reiber's Conclusions Are Unreliable, Speculative And Unsupported By Factual Data**

A district court must decide whether the proffered expert testimony "has a sufficiently reliable foundation to permit it to be considered." Amorgianos, 303 F.3d at 265. Courts must ensure that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., 526 U.S. at 152.

Courts consistently have held that expert economic testimony as to future economic loss should not be submitted to the jury where it is based on speculation or assumptions lacking a sufficient foundation in the record. *See e.g.*, Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18,22

8

(2d Cir. 1996) (holding that district court abused its discretion in permitting economist to testify regarding plaintiff's past and future lost earnings capacity based on unrealistic and speculative assumptions); Gumbs v. International Harvester, Inc. 718 F.2d 88,98 (3d Cir. 1983) (economic testimony based on speculative assumptions is inadmissible); Benjamin v. Peter's Farm Condominiums Owners Assoc., 820 F.2d 640, 642, 43 (3d Cir. 1987) (setting aside a jury verdict because economic expert's testimony was a "castle made of sand" because it lacked "sufficient factual predicates"); Supply & Building Co. v. Estee Lauder International, Inc., 2001 WL 1602976 *4, 5 (S.D.N.Y. 2001).  With specific regard to life care plans, a cost evaluation of projected future costs is without foundation and inadmissible when the opinions regarding the care on which the cost evaluation is based are deemed inadmissible.  *See* Norwest Bank v. K-Mart Corp., No. 3:94-CV-78RM, 1997 WL 33479072, at *6 (N.D. Ind. 1997).

Here, Gordon's purported Life Care Plan is completely devoid of any foundational or factual support.  Plaintiff specifically and unambiguously denied the need for virtually all of Gordon's projected future medical care items.  Gordon did not meet with plaintiff and based her projections solely on a small sampling of outdated medical records.  Absent any foundational support for her projections, her opinions are clearly unreliable and speculative.  Accordingly, Gordon's purported Life Care Plan and any testimony relying on it is inadmissible as a matter of law.

Reiber's General Data Sheet is equally devoid of foundational and factual support.  Indeed, the General Data Sheet contains no explanation as to how his calculations were reached.  Rather, Rebier merely proffers highly speculative conclusions based on his own "say so" or ipse dixit and Gordon's disproven projections – all of which are unsupported by competent factual data.

Reiber, like Gordon, completed his "expert" report without ever reviewing plaintiff's deposition testimony and without knowing his past or present economic situation.  Had Reiber actually reviewed plaintiff's testimony, he would have discovered that plaintiff expressly rejected the entire basis for his future medical care cost projections, and that his future lost wages projections are based on the false assumption that plaintiff was previously employed as a full time employee.

Moreover, Reiber's future lost earnings opinions are based on the assumption that Plaintiff is unable to return to the workforce. That assumption completely ignores the fact that no medical professional has ever restricted him from returning to work, and that he is well-suited, based on his education and experience, to return to the workforce, even if only in a sedentary capacity.

Simply put, Reiber future income estimates and future medical care cost projections are completely untethered from the facts and are patently unreliable.  Because Reiber's analysis lacks reliability based on his ignorance of the plaintiff's medical and economic record, his testimony and General Data Sheet should also be excluded.  Rule 702; *see also* Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 22 (2d Cir. 1996) (a proffered expert opinion based upon inaccurate assumptions or incomplete data is not admissible under FRE 702).

## POINT II

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE, EXPERT OR OTHERWISE, REGARDING THE WEATHER/TEMPERATURE AT THE BUFFALO NIAGARA INTERNATIONAL AIRPORT

As the Court is well-aware, plaintiff failed to submit any expert witness list, and thus should be precluded from offering any expert testimony or reports in support of his liability or damages claims.  It is noted that plaintiff previously disclosed a meteorological expert for the purposes of discovery, who relied upon a climatological report showing the temperature and precipitation at

the Buffalo Niagara International Airport for a period of time surrounding the incident, in an attempt to present circumstantial evidence of the temperature and precipitation at the subject Goodyear parking lot.  The isolated climatological data was previously submitted to the Court in plaintiff's Pretrial Memorandum.

Significantly, the Buffalo airport is at least seven miles away from the subject Goodyear. Under the relevant case law, the climatological report and any expert testimony that relies upon it has no evidentiary value and is impermissible to establish the air temperature at a particular location.

As the Western District of New York has recognized, "[c]limatological conditions, however, may vary from one locale to another situated three to five miles away."  Raimond v. United States, No. 02-CV-0620E(SR), 2004 WL 2108364, at *2 (W.D.N.Y. Sept. 21, 2004). Accordingly, weather reports from even one mile away do not provide conclusive evidence of the air temperature at a particular location.  Bellomo v. United Arab Shipping Co., 863 F.Supp. 107, 110–11 (E.D.N.Y. 1994).

The Western District of New York held that such climatological reports and data are inadmissible in Bryndle v. Boulevard Towers, II, LLC, 132 F. Supp. 3d 486 (W.D.N.Y. 2015). There, the plaintiff attempted to use climatological data recorded at the Buffalo airport to establish the specific temperatures as evidence of freeze—thaw cycles some six to ten miles away.  District Court Justice Elizabeth A. Wolford held that "[p]laintiff's attempt to use the climatological records in this manner is inappropriate."  Id. at 498.  More specifically, Justice Wolford commented that plaintiff's expert meteorologist's "reliance on the climatological records in this manner causes the opinion to be wholly speculative."  Id. Accordingly, although the court ultimately declined to strike

the climatological records, Justice Wolford refused to consider them as evidence of the specific temperatures in the parking lot where the plaintiff's slip and fall occurred.

Bryndle is indistinguishable.  Like the plaintiff in Bryndle, it is anticipated that plaintiff will attempt to use climatological data recorded at the Buffalo airport to establish the specific temperatures as evidence of freeze—thaw cycles seven miles away (Goodyear can only speculate as to plaintiff's expert meteorologist's testimony, because he failed to file a Trial Expert List).  As the court held in Bryndle, any such reliance on the climatological records would render plaintiff's expert's opinions wholly speculative.  Accordingly, the court should strike the climatological records and preclude any testimony from plaintiff's meteorological expert, since his opinions are presumably based entirely on those records.   In contrast to Bryndle, preclusion of the climatological records in their entirety is warranted here, since the case will be tried without a jury.

**POINT III**

**PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING ANY PHOTOGRAPHS OF THE PARKING LOT THAT WERE NOT DISCLOSED DURING DISCOVERY**

On September 11, 2019, long after discovery had been completed, plaintiff disclosed several photographs of the Goodyear parking lot.  The photographs have not been submitted with this motion because they are inadmissible and should not be viewed by the fact-finder.  Upon inquiry into the source of the photographs, plaintiff's counsel indicated that he personally took the photographs "very recently."  If plaintiff attempts to offer these photographs into evidence (despite his failure to file the required Exhibit List), they should be precluded.

Rule 403 of the Federal Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by [inter alia] unfair prejudice."  While photographs of the Goodyear parking lot are marginally relevant, the eleventh hour photographs

taken by plaintiff's counsel should not even be allowed to be presented for authentication, because the danger of unfair prejudice far outweighs any probative value they hold (which is none).

Certainly, neither plaintiff nor anyone else cannot reasonably attest that the condition of the parking lot is substantially the same as it was on the date of the incident.  During the four and a half years since the incident, the parking lot has either been re-paved or has endured four and a half years of wear and tear.  Either way, it cannot possibly fairly and accurately depict the condition of the parking lot on the date of the incident.  Moreover, because plaintiff never identified the exact location of his alleged slip and fall, photographs generally depicting the parking lot four and a half years after the incident have no probative value whatsoever.

It is respectfully submitted that any photographs that were not disclosed prior to the close of discovery, including those photographs disclosed on September 11, 2019, should be precluded from admission at trial.

## CONCLUSION

For the reasons set forth above, Goodyear respectfully requests that the Court issue an Order precluding the following from admission into evidence at trial: (1) the testimony and purported Life Care Plan of Rebecca Gordon, RN, CLNC, CLCP; (2) the testimony and General Data Sheet prepared by plaintiff's economic damages expert, Ronald Reiber, Ph.D.; (3) any evidence, expert or otherwise, regarding the weather/temperature recorded at Buffalo Niagara International Airport at the time of the incident; and (4) any photographs that were not disclosed prior to the close of discovery, including those photographs disclosed on September 11, 2019; and granting Goodyear such other and further relief as this Honorable Court deems just and proper.

Dated: Buffalo, New York
       November 12, 2019

Respectfully submitted,

GOLDBERG SEGALLA LLP


By: *s/Kenneth L. Bostick, Jr.*
      Kenneth L. Bostick, Jr.
      *Attorneys for Defendant*
      *The Goodyear Tire & Rubber Company*
      665 Main Street, Suite 400
      Buffalo, New York 14203
      716-566-5400
      kbostick@goldbergsegalla.com