UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

OLIVER CONOVER,
    Plaintiff

V.                               Case No.:1:17-cv-00486-LJV-HBS

THE GOODYEAR TIRE & RUBBER COMPANY
    Defendant

---

## PLAINTIFF OLIVER CONOVER'S TRIAL MEMORANDUM

### I. INTRODUCTION

This is a negligence action arising from an accident on January 19, 2015 in which Oliver Conover sustained serious injuries when he slipped and fell on ice, while walking on property owned and/or controlled by Defendant, The Goodyear Tire & Rubber Company ("Goodyear").

As a result of the fall, Mr. Conover suffered injuries to his lower back, his left and right hip, and to his left knee. Mr. Conover also had to deal with complications related to his left knee surgery, as detailed below.

### II. PROPOSED STIPULATED FACTS

The Plaintiff suggests that the following factual assertions are not subject to dispute and should be established by stipulation:

1. The accident occurred on the morning of January 19, 2015.
2. The accident occurred in the parking lot of the Goodyear retail location on Main Street in Buffalo, NY.
3. The weather/temperature at the airport (not necessarily identical to the weather/temperature at the accident scene) in the time frame at and around the time of the accident was consistent with the data set forth in Exhibit A.
4. Plaintiff Oliver Conover was carrying boxes of auto parts to the Goodyear store when the accident occurred.
5. The auto parts being delivered were previously ordered by Goodyear, from Mr. Conover's employer.
6. Goodyear employee Tom Bird opened the store that morning, and was working at the time of the accident.

7. The accident was reported to Mr. Bird shortly after it occurred on the morning of the accident.
8. Goodyear had a contract for snow removal with a Third-Party at the time of the accident.
9. The contract for snow removal required the vendor to plow when there were two or more inches of snow in the parking lot.
10. Goodyear employees were responsible for snow removal of less than two inches accumulation, as well as all ice removal, and all application of salt/snow melt.

## III. LIABILITY

### A. Conover's Slip and Fall

On January 19, 2015 Mr. Conover was in the course of his employment as a delivery driver for NAPA. Mr. Conover arrived at The Goodyear service location at 1355 Main Street, in Buffalo, NY. He parked his delivery vehicle near the south (delivery/service) entrance. He gathered the materials being delivered from his vehicle and attempted to traverse the area of the parking lot leading to the service entrance door. In so doing, he stepped on an icy condition on the parking lot, near the south entrance.

### B. Discussion of Relevant Law

Goodyear has a duty to keep their premises in a reasonably safe condition under New York law. It is not clear if any effort was made to the clear snow/ice from the parking lot the morning of the accident. Even assuming, *arguendo*, that some effort was undertaken, New York law holds that liability may attach where a defendant made an area they control "more dangerous by clearing away the snow and revealing patches of slippery ice that were not properly removed." Rugova v. Holland, 272 AD. 2d, 261. Therefore, Goodyear is liable either if it failed to clear ice and snow from its parking lot or – if Goodyear did clear snow from the parking lot – by creating an even more dangerous condition, i.e. exposed and untreated ice.

If no effort was made to clear the icy condition, liability against the defendants is predicated upon their non-delegable to duty maintain a safe premises. See NY PJI 2:90, Basso v. Miller, 40 NY 2d 233.[1]

With regard to comparative fault, it is noted that New York is a pure comparative fault state. Even if Mr. Conover is eventually found to be partially at fault for the accident (which is

---

[1] It should also be noted that Mr. Bird parked his truck in such a manner as to have traversed within a very short distance of the condition at issue on his way into work between 7:00-7:30 on the morning of the accident. As such, there is no serious issue of constructive notice to Goodyear.

2

neither suggested nor conceded) Goodyear will be responsible for its proportionate share of Mr. Conover's damages. It is further noted that Mr. Conover was carrying delivery materials, ordered by the defendant, which decreased his ability to see where he stepped.

## IV. DAMAGES

Mr. Conover sustained injuries to the low back, left knee, and both hips. The hip injuries are not expected to create any particular legal issues. However there may be some pertinent issues with regard to the knee and back injuries.

### A. <u>Aggravation of Prexisting Condition (low back)</u>

Mr. Conover suffered significant injuries to his lower back as a result of the slip and fall accident. The accident was an aggravating/activating cause of a previous lower back injury suffered as result of a 2012 motor vehicle accident while working for the same employer. Pursuant to records of Dr. Nicholas A. Abramo of Chiropractic Care of WNY from February 10, 2015, attached hereto as Exhibit B, Mr. Conover had "healed 100%" from the prior injury of 2012 and had "returned to pre-loss activities". Though Mr. Conover previously had a lower back injury, New York law makes it clear that a plaintiff may recover for suffering and disability as a result of an aggravation of a pre-existing injury. More specifically, the jury charges read:

> If you find that before this accident the plaintiff had a condition, and further find that because of the accident this condition was aggravated so as to cause increased suffering and disability, then the plaintiff is entitled to recover for any increased disability or pain resulting from such aggravation. (NY PJI 2:282)
>
> The fact that the plaintiff may have a physical or mental condition that makes him more susceptible to injury than a normal healthy person does not relieve the defendant of liability for all injuries sustained as a result of its negligence. The defendant is liable even though those injuries are greater than those that would have been sustained by a normal healthy person under the same circumstances. (NY PJI 2:283)

As noted in Dr. Abramos' report, Plaintiff had fully recovered from his previous lower back injury. He had returned to work after his previous injury in March of 2012, and was in a good state of physical and mental health at the time of the January 19, 2015 slip and fall. Following the 2015 injury, Mr. Conover was referred to an orthopedist, Dr. Cameron B. Huckell, for his continuing lower back pain. On July 10, 2015, Dr. Huckell's finding were: a circumferential L3-4 disc bulge with posterior disc protrusion that extends approximately 3 mm into the spinal canal mildly indenting the ventral thecal sac, a mild diffuse posterior L4-5 disc bulge, and a diffuse L5-S1 disc bulge/sub ligamentous disc protrusion that partially effaces the anterior epidural fat, all of which

can explain the patient's current symptoms. See Dr. Cameron B. Huckell's July 15, 2015 Report, attached as Exhibit C.

In the causality portion of Dr. Huckell's report, he opines that "the above work related accident dated January 19, 2015 was an aggravating/activating event to a pre-existing cervical and lumbar spinal condition." Dr. Huckell's general assessment is that Mr. Conover suffered significant injuries to the spine as a result of the 2015 work-related accident. Dr. Cameron Huckell's Doctor's Report of MMI/Permanent Impairment from April 12, 2016, attached as Exhibit D, concluded that Mr. Conover had reached the point of Maximum Medical Improvement (as of April 12, 2016), and that there is a permanent impairment in the patient's lower back and that the patient is unable to perform even sedentary work.

Notwithstanding any prior injuries to the low back, the Plaintiff's damages will include permeant, less than sedentary, disability and all damages stemming therefrom.

### B. <u>Complications Due to Knee Surgery</u>

Mr. Conover's left knee sustained a meniscus tear as a result of the slip and fall which required surgical repair. Mr. Conover underwent a left knee arthroscopy and partial medial meniscectomy on November 19, 2015. The surgical report found grade 2 changes of the posterior medial tibial plateau and a complex tear of the posterior horn and a portion of the body of the medial meniscus. It was also noted that there was a significant radial component to the tear.

Complications ensued after Mr. Conover's arthroscopy and meniscectomy surgery. In New York, Defendants are liable for any aggravation of an injury and for any additional pain and suffering caused by any negligence or lack of skill of any doctor who treated Plaintiff for the original injury. See, NY PJI 2:305:

> If you find that the defendant was negligent and that defendant's negligence caused plaintiff's injury, defendant is responsible for the injury and the pain and suffering caused by defendant's negligence. Defendant is also liable for any aggravation of the injury and for any additional pain and suffering caused by any negligence or lack of skill of any doctor who treated the plaintiff for the original injury.

Mr. Conover reported to the hospital complaining of swelling in his surgically repaired left knee. A skin infection was diagnosed by Dr. Douglas Hickox and Mr. Conover was prescribed 500 mg of Naproxen for his pain and inflammation as well as 300 mg clindamycin, six times a day, for the skin infection on his left knee. Although originally diagnosed as a skin infection, it was later rediagnosed as a "Hematoma/Seroma," which is a localized collection of serum or plasma that collects under the skin.

To whatever extent the damages related to the Plaintiff's knee injury are attributable to poor medical care, it will be of no avail to the Defendants.

4

C. **Special Damages/Workers Compensation Lien**

As of July 12, 2017, according to Gallagher Bassett, an insurance company currently administering Mr. Conover's Workers' Compensation program, Mr. Conover has liens in the amounts of:

| | |
|---|---|
| Indemnity: | $72,222.95 |
| Medical: | $25,081.37 |

**Total lien amount:** **$97,304.32**

This lien amount may seem modest in relation to the severity of Mr. Conover's injuries. This because he accepted a 35-B 'lump sum' settlement over two years ago. He is expected to testify that he did so because of desperate financial circumstances, including the likely loss of this home to foreclosure.

The Plaintiff is claiming future medical expenses and lost wages, and intends to call experts as set forth in the expert disclosures previously submitted. It is noted that the defense has also disclosed purported expert damages witnesses.

Thank you for the court's consideration.

Respectfully submitted,
Oliver Conover, Plaintiff
By his Attorney:

Scott R. Orndoff, Esq.
80 W. Huron Street
Buffalo, NY 14202
Phone: 716-854-1300
Fax: 716-842-6354

Dated: November 5, 2019